THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ANNA MAE ADAMS, Defendant-Appellant.

Second District   No. 77-523

Opinion filed April 23, 1979.

Mary Robinson and Elizabeth E. Clarke, both of State Appellate Defender's Office, of Elgin, for appellant.

Dennis Ryan, State's Attorney, of Waukegan (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Anna Mae Adams was convicted of murder following a jury trial and sentenced to 14-25 years imprisonment. She appeals, contending that she was not proven guilty beyond a reasonable doubt; alternatively, that prejudicial error was committed in denying her the right to show that the deceased had previously committed a specific act of violence of which she had knowledge.

It is not disputed that on November 17, 1976, defendant shot and killed Albert Johnson with whom she had been living for the previous 5½ years. The shooting took place at 1321 Ridgeland Avenue in Waukegan, the residence where defendant and the deceased lived together. On some unspecified date before the shooting the defendant had rented a second apartment in Zion, spending about two nights a week at the Zion residence and the other five nights with Johnson at the Waukegan residence.

The evidence showed that Johnson had beaten the defendant several times over the years and on one occasion, when the defendant had just returned from a stay in the hospital, kicked the defendant down the basement stairs.

On the morning of November 16 previous to the shooting Johnson came to the defendant's apartment in Zion. Johnson accused the defendant of preparing to go to Milwaukee, apparently to see another man, which she denied. She said that he then slapped her, knocked her to the floor, straddled her and tortured her with a lighted cigarette.

On the evening of November 16, 1976, the defendant went to a bingo game with other women. While they were at the game Johnson arrived with a Mrs. Jessie Moore. Johnson and Mrs. Moore sat at the table and an argument took place between the deceased and the defendant.

The evidence shows that the defendant spent that night at her residence in Zion while Johnson spent the night with Mrs. Moore in the house on Ridgeland. Mrs. Moore said that during the night she heard a shot fired and on later inspection a bullet was found lodged in a wall of the house. A firearms examiner testified that in his opinion the bullet retrieved from the wall was discharged by the same firearm as one found in the driveway after the killing; but the examiner had not written this down in his records.

There was undisputed testimony that very early on the morning of Wednesday, November 17, 1976, the defendant arrived at the house on Ridgeland, knocked on the door but was not admitted by either Mrs. Moore or Johnson; that she then punctured all four tires on Johnson's car using an ice pick she had brought with her; and defendant returned to her Zion residence.

The defendant then returned to the house on Ridgeland between 9 a.m. and 10 a.m. on the same day. At this time Johnson was in the driveway of the house in the process of changing his four flat tires; Mrs. Moore was with him in the driveway.

The defendant testified that she emerged from the car with some laundry in her hands. Mrs. Moore, on the other hand, testified that defendant came out of the car with a gun in her hands. Mrs. Moore thereupon entered the house and proceeded to call the police. She was not an eyewitness to the shooting. A statement given by defendant to the police after the shooting was similar to her trial testimony except that she then stated that the deceased said he was going to shoot her and pulled his gun; she wrestled with him, he dropped it, she picked it up; she pulled the trigger.

The defendant testified that after Mrs. Moore left, Johnson began to advance towards her with a tire iron in his hand, stating, "I am going to kill you, bitch." Defendant said that Johnson hit her on the side of her

head with the iron, hit her on her shoulder and over her back, again repeated that he was going to kill her. As she was backing out into Ridgeland and saying "Don't, don't," she pulled a pistol out, again asked him not to come at her any more, then shot him in the left side as a "warning" but "didn't try to kill him." She testified that defendant kept on coming, that she was getting back to the end of her car and asked him not to come closer but that he took the iron back and that she shot him again whereupon he fell and she drove away.

Myrna Christakis testified for the State. She said she was driving west on Ridgeland at about 10 a.m. on November 17, 1976, when she heard a noise that sounded like a firecracker. She observed a man and a woman in front of the house at 1321 Ridgeland for a period between 90 seconds and two minutes. After hearing a shot and while her car was stopped at the stop sign, she testified:

"* * * he was backing, she was going forward and the man—well, there was another pop and the man was shot and fell backwards onto Ridgeland Avenue.

Q Did you observe anything about the hands of the man as he was retreating 30 or 40 feet?

A No, just walking backwards.

Q Did you observe where his hands were?

A At his side.

Q Did you observe anything unusual about his hands as he fell after he was shot?

A After he was shot he fell backwards and I saw a tire tool in his right hand.

[She testified in substance that the parties were within a foot apart and that he was backing all the time.]

The man fell backwards into the street. The woman at that time walked around.

It's hard for me to explain. She walked between her car and the body was laying there and she walked around it to get in her car.

At that point she turned around and came back to the body, touched the shoulder with her foot and then went back with her car and put something in her pocket."

The State also introduced testimony that a voice which the officers later identified as being that of the defendant had called in later on the day of the shooting inquiring as to Johnson's condition. During the course of one of the conversations the defendant had given her name, said that she did it and had said: "If he isn't dead, I'll do it again. Tell me where he's at." The defendant in her trial testimony denied that she had called.

There was further evidence that Johnson died as a result of hemorrhages due to three bullet wounds in the area of the thorax. There

was also evidence that as Johnson lay dead in the street, he had the tire iron in his hand.

Defendant's contention that she was not proved guilty beyond a reasonable doubt is more particularly based on her claim that the State did not disprove her testimony that she acted in self-defense. We do not agree.

■■■ Undisputedly, the defendant's testimony was sufficient to raise the issue of self-defense (see, *e.g., People v. Rorer,* 44 Ill. App. 3d 553, 557-58 (1976); *see also People v. LaGardo,* 59 Ill. App. 3d 780, 782-83 (1978)), and the burden of proving that defendant did not act in self-defense shifted to the State and required proof beyond a reasonable doubt (Ill. Rev. Stat. 1977, ch. 38, par. 3—2(b); *People v. Williams,* 57 Ill. 2d 239, 242 (1974)). However, the jury was not required to believe defendant's exculpatory testimony. See, *e.g., People v. Manion,* 67 Ill. 2d 564, 578 (1977).

If the jurors chose not to believe defendant's testimony as to the occurrence, the question of whether defendant rather than the deceased was the initial aggressor could have been resolved against her from the credible evidence. This included proof of the circumstances which showed defendant's hostile feelings toward the decedent culminating in the fact that she punctured four tires on his car; and direct proof by Mrs. Moore that defendant emerged from her car brandishing a weapon in her hands. The fact that the deceased had a tire iron in his hands does not necessarily lead to the conclusion that he was the initial aggressor since he could reasonably be expected to have such a tool in his hands in view of the fact that, at the time defendant arrived, the deceased was in the act of changing his four flat tires.

However, even if the jurors were to believe from the evidence that the decedent was the initial aggressor they could also have believed that the further actions of the defendant were proof beyond a reasonable doubt that defendant did not thereafter act in self-defense. The testimony of Mrs. Christakis, who was an eyewitness to everything that happened after the first shot was fired, established that she observed the defendant over a period of 90 seconds to two minutes; that during that time the man was walking slowly backwards and the woman walking forward, with only about a foot separating the two; that the decedent did not raise his hands which were by his side during the entire period and that she noticed the tire iron only after he fell backwards. Thus, even if the decedent were the initial aggressor, the subsequent conduct ascribed by this witness to defendant could have been viewed as without justification. While defendant argues that Mrs. Christakis' testimony is not credible because she was unable to see the deceased's hands during all of the time, it should be noted that the witness was positive that at the time the third

shot was fired the deceased's hands were at his side. See, *e.g., People v. Limas,* 45 Ill. App. 3d 643, 752 (1977).

*People v. Shipp,* 52 Ill. App. 3d 470, 477 (1977) is distinguishable on its facts and represents an application of the rule that shots fired after a peril has ceased to exist will not mechanically deprive one of the defense if the shots are fired "in the space of a few seconds" where one is under great stress and has been pursued by one intent on doing great bodily harm. (*People v. Motuzas,* 352 Ill. 340, 346 (1933).) Here the interval of time after the first shot was heard according to Mrs. Christakis was from 1½ to two minutes.

■■ Defendant also argues that the court erred in refusing to permit her to introduce evidence that she knew that Johnson had, on at least one occasion, killed a man. The defendant's volunteered remark from the witness stand that she knew that Johnson had "killed" was stricken. At the ensuing conference in chambers defendant's attorney stated that he wished to elicit from the defendant her knowledge that Johnson was a killer and stated that he could produce evidence that Johnson had, in fact, killed a man in a tavern in Waukegan. The judge ruled that evidence of the defendant's actual knowledge of a supposed specific act of violence on the deceased's part was inadmissible. We agree that this was error, but we do not find that the exclusion was reversible error.

■■ Since it is clearly permissible to bring out "defendant's perception of the danger" (see *People v. Shipp,* 52 Ill. App. 3d at 476), specific facts bearing on this perception should be admitted. While in *McDonnall v. People,* 168 Ill. 93, 95-96 (1897), the Illinois Supreme Court approved the trial court's action in refusing to admit evidence that the deceased was in the habit of carrying a pistol with him, it is apparent that it did so because the evidence did not indicate that the defendants knew this to be the case. In *People v. Allen,* 378 Ill. 164, 168 (1941), the supreme court specifically noted that *McDonnall* "inferentially held that proof of going about habitually armed with a deadly weapon, if known to the defendant, is proper evidence" and equated it with the rule with regard to reputation for violence. We conclude that specific acts of violence on the part of the deceased, if known to the defendant, are admissible to show the reasonableness of the defendant's apprehension of danger. See also *People v. Singleton,* 41 Ill. App. 3d 665, 668 (1976); *People v. Ortiz,* 65 Ill. App. 3d 525, 533 (1978). See also *United States v. Burks,* 470 F. 2d 432, 435 n. 5 (D.C. Cir. 1972).

However, the error did not deny the defendant her right to fully develop her defense. She was allowed to testify to her tumultuous relationship with the deceased and also as to various occasions on which the deceased had treated her with extreme cruelty. As a consequence the

jury was fully apprised of her knowledge of the deceased's violent disposition, and the exclusion was harmless error.

We therefore affirm the judgment.

Affirmed.

RECHENMACHER and NASH, JJ., concur.