THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOSEPH GALL, Defendant-Appellant.

First District (5th Division)   No. 78-1206

Opinion filed December 28, 1979.

824

Ralph Ruebner and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Pamela L. Gray, and May A. Jischke, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Following a jury trial defendant was convicted of murder (Ill. Rev. Stat. 1977, ch. 38, par. 9—1) and sentenced to a term of 20 to 35 years' imprisonment. On appeal, he contends that the trial court erred in preventing him from testifying as to his prior awareness of the deceased's manslaughter conviction and as to the deceased's reputation.

The following pertinent evidence was adduced at trial.

*For the State*

*Ted Bugla*

On the evening of December 21, 1976, he was riding with Lloyd Munoz in the latter's automobile. He was in the front passenger seat and Munoz was driving. As they drove in a northerly direction on the 2600 block of North Hoyne Avenue, Munoz slowed down, stating he knew the owners of a van parked on the east side of the street. Gilbert Molina and three other persons were standing on the west side of Hoyne, just north of the van. As Munoz stopped the car, Bugla heard Molina say, "Watch out. They got guns." Munoz quickly increased the speed. As they drove down the street, he heard three or four shots. The car stopped, then backed up 10 or 20 feet and hit a car on the east side of the street. Munoz appeared to be unconscious so he left the car, ran to a gas station and telephoned the police. As he ran away he heard three or four more shots. Neither he nor Munoz was armed at the time of the shooting.

On cross-examination he stated that Munoz had purchased a gun from Gilbert Molina earlier in the day. Munoz's car did not jump the curb at the time of the shooting.

*Carlos Martinez*

He was present at approximately 5 p.m. on December 21, 1976, when Walter Graf tried to sell a .22-caliber gun to Gilbert Molina. They drove in

Graf's van to the apartment of Molina's friend, where Molina left the van "to sell the gun to one of his partners." Approximately five minutes later Molina returned and told them to wait in the alley until he received payment. Graf drove the van into the alley. Molina did not return with the money, so Graf went to find him. Returning alone, Graf stated that Molina and another man left in a car. Graf proceeded to drive around the area "looking for the guys that cut out with the gun."

Later that evening Graf and defendant came to his apartment at 2629 N. Hoyne. Graf was carrying a small automatic pistol, identified as people's exhibit No. 7. A loaded 9 mm gun identified as people's exhibit No. 8 was in the apartment at that time. He, Graf and defendant left the apartment to look for Molina. At approximately 6:30 p.m. they found Molina half a block from the apartment. Graf forced Molina at gunpoint to return to the apartment where Graf and Molina argued about the gun. Gall was playing with the 9 mm gun identified as people's exhibit No. 8. Thereafter, he, Molina, Gall and Graf left the apartment. Gall was carrying the loaded 9 mm gun. As they began walking north on the west side of Hoyne, he heard Graf's mother scream, "Here they come." He saw a car with two people who he did not know approaching. Graf, who had a .25 automatic pistol in his hand, "got in front of the car and tried to stop [it]." As the man in the passenger seat attempted to leave the car, a shot was fired. Defendant was standing in the middle of the street approximately 15 feet in back of the car and was pointing the 9 mm gun toward the car. After seeing defendant fire one shot, he ran home. He heard 'five or six more shots and a car crash. Graf and defendant also returned to his apartment. Defendant gave the 9 mm gun to Martinez's brother and "said to stash it." Defendant told him that if the police came he should explain that defendant was visiting.

On cross-examination he stated that he did not know the individual to whom Gilbert Molina sold the gun.

*Eddie Martinez*

He resides with his brother Carlos Martinez at 2639 N. Hoyne. When he arrived home at approximately 6:30 p.m. on December 21, 1976, his brother, Graf, and defendant were present, but left shortly thereafter. They returned approximately 10 minutes later with Gilbert Molina. Graf had a gun pointed at Molina's head. He heard Molina tell Graf that "he was going to pay him." Defendant agreed that "now we are going to kill them." Approximately an hour later Graf's mother arrived and said that she had just seen Munoz outside. Graf, Molina, Carlos and defendant immediately left. Graf and defendant were carrying guns. After hearing gun shots he looked outside and saw defendant shooting "plenty of times" at a car. As the car crashed defendant continued to shoot. Defendant,

Carlos and Graf then returned to the apartment. Defendant gave him the gun, told him to stash it, and said, "We got him." Although he did hide the gun, he later gave it to the police.

*Gilbert Molina*

He agreed to sell a .22-caliber revolver for Walter Graf. He took the revolver to Lloyd Munoz's apartment while Graf and Carlos Martinez waited outside for him. A short time later he returned and told Graf to park in the alley. He did not pay Graf for the gun. He then drove away with Munoz in the latter's automobile. Later, as they drove down Hoyne, Graf "took a couple of shots at us" with a small gun but missed.

After Munoz dropped him off at approximately 7 p.m., he was approached at gunpoint by Graf, Carlos Martinez and defendant. They took him to Martinez's apartment where Graf demanded payment of $35. Shortly thereafter he, Graf, the Martinez brothers and defendant left the apartment. Defendant was carrying a 9 mm semi-automatic pistol. As they walked north on Hoyne, he saw Munoz and someone else driving north on Hoyne. When Munoz stopped, he said, "Lloyd, Lloyd, watch out. They got guns." Graf, who was in front of the car, began shooting at Munoz. Defendant was standing in back of the car and also began shooting at Munoz. The car went into reverse and smashed into another car. He stated that defendant fired several shots.

*Dr. Beamer, Assistant Medical Examiner for Cook County*

He performed an autopsy on decedent and determined that the cause of Lloyd Munoz's death was a gunshot wound.

*Andrew Brooks, Chicago Police Officer*

He examined Lloyd Munoz's car shortly after the shooting. He determined that a bullet had passed through the trunk and rear seat and lodged in the back of the head rest on the front passenger's seat. He recovered this bullet and turned it over to a firearms examiner.

*Ernest Weaver, Chicago Police Department Firearms Examiner*

He examined the .25-caliber and 9 mm guns used in the shooting as well as the bullet recovered from Lloyd Munoz's car by Officer Brooks. In his opinion the bullet was fired from the 9 mm gun and not from the .25-caliber gun.

*For the Defendant*

*Joseph Gall, on his own behalf*

At approximately 8 p.m. on December 21, 1976, he, Graf and Molina were at the Martinez apartment. Molina stated that he had wanted to give the gun back to Graf, but that Munoz had "hit him in the face somewhere and kicked him out of his car." Molina also stated that Munoz "was going to go get some guy to come back and get" Graf. Defendant understood this to mean that Munoz was going to attempt to shoot Graf.

He, Molina, Carlos Martinez and Graf then left the apartment and began walking north on the west side of the street. Graf was carrying a 9 mm gun and he was carrying a .25-caliber gun. As they were walking he heard Martinez shout, "Here they come and they got guns." He turned around and noticed that a car driven by Lloyd Munoz "was coming toward us on the sidewalk. The car jumped the sidewalk." Munoz was "trying to run us over." As he jumped to the side he heard several shots so he shot at the car. The passenger in the car shot at him. Munoz was also armed with a gun. He was in fear of his life. He believed that Munoz and the passenger were going to kill him, Graf and Molina.

On cross-examination he stated that he fired only one shot at the car. Graf fired four or five shots. He denied later giving the 9 mm gun to Eddie Martinez to hide.

OPINION

■■ The State initially argues that defendant has waived consideration of the issues presented here by failing to specifically include those issues in his written motion for a new trial. The law is clear that failure to raise an issue in a written motion for a new trial constitutes a waiver of that issue and precludes review thereof on appeal. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) Defendant's motion for a new trial in the instant case makes no reference to the errors raised in this appeal. Accordingly, defendant has waived the errors asserted here.

Moreover, after a careful review of the record before us we are convinced that the first error complained of was certainly harmless beyond a reasonable doubt and that the record does not establish the existence of the second error.

Defendant first contends that he was denied a fair trial where the trial court precluded him from testifying as to his prior knowledge of Lloyd Munoz's conviction for manslaughter. He argues that because he raised the issue of self-defense, his knowledge of that conviction at the time of the shooting was relevant and material to the jury's assessment of his belief that the use of such force was justified. The State does not contest his assertion that his testimony at least raised the issue of self-defense.

We agree that defendant should have been allowed to testify as to his knowledge of Munoz's conviction for manslaughter. In *People v. Stombaugh* (1972), 52 Ill. 2d 130, 139, 284 N.E.2d 640, 645, our supreme court stated that:

> "[W]here, in a prosecution for homicide, an accused relies upon self-defense and evidence has been introduced from which the jury could believe that the deceased was the assailant, then evidence concerning the violent temper and disposition of the deceased and his prior threats to the defendant is admissible as

tending to show the circumstances confronting the defendant, the extent of his apparent danger, and the motive by which he was influenced. Such circumstances are relevant in that they tend to show the defendant's state of mind."

■■ ■ Additionally, it has been held that the deceased's specific acts of violence, if known to defendant, are admissible to show the reasonableness of defendant's apprehension of danger. (*People v. Adams* (1979), 71 Ill. App. 3d 70, 388 N.E.2d 1326; *People v. Shipp* (1977), 52 Ill. App. 3d 470, 367 N.E.2d 966.) Defendant's knowledge of the manslaughter conviction at the time he shot Munoz in alleged self-defense was clearly relevant on the issue of whether he acted reasonably and the testimony should have been allowed.

The State argues, however, that only violent acts or threats directed at the accused himself, rather than at another person, may be admitted. We do not agree. Recently, the Third District held it error for the trial court to prohibit defendant, who had claimed self-defense, from testifying as to her knowledge that the deceased, "had, on at least one occasion, killed a man." (*People v. Adams* (1979), 71 Ill. App. 3d 70, 75, 388 N.E.2d 1326, 1329.) The *Adams* court held that such evidence tended to establish the reasonableness of defendant's decision to use force in self-defense. We agree with the reasoning of *Adams*. The purpose underlying the rule is to determine whether defendant reasonably believed that the use of force was necessary to prevent the deceased from killing or greatly injuring him. (See *People v. Shipp* (1977), 52 Ill. App. 3d 470, 367 N.E.2d 966.) Defendant's knowledge of the deceased's prior acts of violence, whether directed at him or at another person, should be admitted to assist the jury in determining the reasonableness of defendant's actions in self-defense.

We find no valid reason to support the distinction drawn by the State.

*People v. Peeler* (1973), 12 Ill. App. 3d 940, 299 N.E.2d 382, upon which the State relies, is distinguishable from the instant case. In *Peeler*, the court held that a defense witness could not testify as to the deceased's specific acts of violence in order to establish his reputation in the community. Such a situation is clearly distinguishable from the case where, as here, defendant attempts to testify as to his own knowledge of the deceased's acts of violence in order to support his claim of self-defense.

Although we recognize that error occurred here, we are convinced, after a careful review of the entire record, that the error was harmless beyond a reasonable doubt. The basis of defendant's claim of self-defense rested upon his testimony that Lloyd Munoz, with gun in hand, was driving an automobile upon the sidewalk directly toward defendant. He testified that this action prompted him to shoot at Munoz and that he was in fear of his life. However, both Carlos Martinez and Gilbert Molina

testified that defendant was standing in back of the car when he fired the shots. This evidence was corroborated by testimony that a bullet from the gun carried by defendant was determined to have been shot into Munoz's car from the rear. Moreover, only defendant testified that the car left the street, and Ted Bugla, the passenger, specifically denied this.

The jury obviously disbelieved defendant's claim that he acted in self-defense. We are convinced beyond a reasonable doubt that the jury would have been no more receptive to the theory of self-defense had defendant been allowed to testify that at the time he was aware of Munoz's manslaughter conviction. Therefore, the error here could not possibly have prejudiced defendant.

Defendant also contends that he was prohibited from testifying as to Lloyd Munoz's reputation in the community. The record, however, clearly indicates that defendant testified that he had no knowledge concerning Munoz's reputation in the community for peacefulness.

For the foregoing reasons the judgment of the circuit court is affirmed.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.