THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
BRADLEY STEVEN ZAGNONI, Defendant-Appellant.

Second District    No. 79-689

Opinion filed May 29, 1981.

Mary Robinson and Elizabeth Clarke, both of State Appellate Defender's Office, of Elgin, for appellant.

Daniel D. Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Gene Armentrout, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant appeals his conviction of burglary on the grounds (1) that the testimony of the State's witnesses was so effectively impeached as to raise a reasonable doubt as to defendant's guilt and (2) the physical evidence introduced in connection with the burglary—a typewriter—should have been suppressed as being the fruit of a search conducted in violation of the fourth amendment.

The defendant and two other men were observed by a couple of young people who were on their way to a skating rink known as Skateland, due to their suspicious activities. There is a warehouse building near the skating rink comprising several small warehouses or storage spaces known as garages with different numbers. The young people, Wayne Hopper and Tracy Lanham, observed the three men moving between

two of the warehouse buildings using a flashlight. Wayne testified that he saw one of the men—who later was identified as the defendant—emerge from warehouse No. 141 carrying something. Wayne was aware that a Rockford police officer, Officer Rinaldo, was working part time as a security officer for Skateland, and he and Tracy immediately went to Skateland and alerted Rinaldo, telling that they believed a burglary was in progress at one of the warehouses. They accompanied Rinaldo back to the warehouses.

At this point, the testimony of Officer Rinaldo and that of Wayne Hopper somewhat diverge. Rinaldo testified that upon reaching the scene he was just in time to observe the defendant emerge from warehouse No. 141 carrying something in his hands, which he deposited in a van standing near the warehouse building, and at that time the doors to both warehouse No. 141, where the burglary occurred, and No. 149, where the van was standing, were open. Tracy, on the other hand, said it was she and Wayne who had observed the defendant coming out of warehouse No. 141 carrying something *before* they went to look for Rinaldo. Upon cross-examination, Wayne testified that after he observed this he went to look for Officer Rinaldo and when he returned with Rinaldo the three men were standing together near warehouse No. 149 (which the defendant rented) and that both doors to 141 and 149 were closed. Tracy also testi-fied that both doors were closed when Wayne and Rinaldo came back. If the warehouse doors were closed, Rinaldo could not have seen the defendant coming out of the door of No. 141 with something in his hands. Therefore, there is a discrepancy.

Other officers arrived on the scene about this time. The testimony indicates the defendant and his friends were placed under arrest after an inquiry as to the ownership of a couple of motorcycles observed on a trailer attached to the van disclosed that one of the motorcycles had been reported as stolen. Rinaldo testified that he approached the men and asked what was going on. All of the men were at that time standing alongside a white van. The defendant was engaged in removing some things from the warehouse and loading them into the van. He told Rinaldo that he rented warehouse No. 149. Rinaldo observed that there was a tarpaulin hiding the contents of a trailer attached to the van, and he observed what he thought was a part of a motorcycle sticking out at the back of the trailer. He knew that some stolen motorcycles had been stored in a building nearby some weeks before and had been recovered by the police. He inquired if he could check out the serial numbers on the motor-cycles on the trailer, and one of the other men said he had no objection. Rinaldo had drawn his gun when he first appeared on the scene, but he testified that he was not pointing the gun at anyone when he asked per-mission to check the motorcycles. His check revealed that a vehicle with

one of the serial numbers noted had been stolen. The testimony indicates that the defendant and his friends were placed under arrest after the report came back that the motorcycle had been stolen, and it therefore appears that they were under arrest before the van itself was searched.

After checking on the motorcycles in the trailer, Rinaldo asked one of the men, Cayo, if he had any objection to him searching the van. At that moment, it appears from the report of proceedings, Rinaldo was not pointing his gun at anybody but had it in his hand. All three suspects were standing by the van and two other officers had arrived at the scene. Cayo replied that he had no objection and Rinaldo proceeded to search the van. He found a pair of bolt cutters and on top of a tool box nearby a type-writer labeled "Sandra Files." Rinaldo testified he had previously looked through the van window and had noted something lying on top of the tool box in the van but his flashlight beam was not sufficient to enable him to see just what it was. He had no information or suspicion about any specific stolen object at that time. Rinaldo had no search warrant. Upon receiving Cayo's assent to search the van, Rinaldo entered the van and found the bolt cutter and the typewriter. He testified that he did not see the typewriter until after he entered the van. The typewriter was presented as physical evidence of the burglary at the preliminary hearing and the defendant moved to suppress this evidence as being the fruit of an illegal search because Officer Rinaldo was without a warrant and he obtained permission to search the van under coercive circumstances at a time when he had no reason to suspect any criminal activity. Neither the defendant nor any of his companions owned the van, but Zagnoni testified that they had borrowed it from a girl and had been using it as living quarters for the past three weeks. No question was raised as to the defendant's possessory right or interest in the van.

The defendant moved to suppress the typewriter as being the fruit of an illegal search, contending that there were no exigent circumstances dispensing the need for a search warrant; that Cayo's consent to the search was involuntary, and there was no reason to suspect the presence of any evidence of a crime within the van at the time the search was made. The trial court, however, found that under the circumstances, the officer being aware that stolen motorcycles had recently been uncovered in the same area, that the van and trailer were highly mobile and that the two young people who had approached him had told him they believed a burglary was in progress, the warrantless search of the van was permissible.

■■ We are inclined to agree with the trial court that, considering the circumstances, Officer Rinaldo was justified in making the warrantless search of the van, even conceding there may have been some doubt as to whether the consent of Cayo, the defendant's companion, to the search was voluntary. We believe under the circumstances the police had reason to suspect a crime was in progress at the time of the search and they

could, therefore, dispense with a search warrant. See *Chambers v. Maroney* (1970), 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975; *People v. Wiseman* (1974), 59 Ill. 2d 45; *People v. Canaday* (1971), 49 Ill. 2d 416.

■■ The defendant also contends that the evidence was so unsatisfactory as to leave a reasonable doubt as to the defendant having stolen the typewriter, since there was a material discrepancy between Officer Rinaldo's testimony and that of the two young people, Wayne Hopper and Tracy Lanham. Rinaldo testified that he saw the defendant emerge from warehouse No. 141 carrying "something white, light beige, of that nature and it was small, it wasn't very big." Officer Rinaldo described the object the defendant was carrying as being about "a foot and a half by maybe that wide again." However, in their testimony both Wayne Hopper and Tracy Lanham testified that they observed the defendant carrying such an object out of warehouse 141 *before* they went to summon Officer Rinaldo at the skating rink and that the door to 141 was pulled down when they arrived back with Officer Rinaldo. The defendant argues that this material discrepancy suggests that Officer Rinaldo may have been mistaken about seeing the defendant carrying an object out of warehouse 141. Since the defendant testified in his own behalf that he was not in warehouse 141—from which Sandra Files' typewriter was stolen—at any time and this is consistent with Hopper and Lanham's testimony, the credibility of Officer Rinaldo's identification of the defendant is raised by this discrepancy. During the cross-examination of Wayne Hopper on that point, the trial judge got somewhat confused as to what the witness had testified to and after realizing his mistake offered to declare a mistrial, which offer was refused by defense counsel. The trial proceeded, and the jury found the defendant guilty of burglary of warehouse No. 141, in that he unlawfully entered that building and stole a typewriter therefrom belonging to Sandra Files.

There is undoubtedly a discrepancy in the testimony as between Hopper and Lanham on the one hand and Officer Rinaldo on the other as to Zagnoni's whereabouts and his actions just prior to and immediately following Officer Rinaldo's arrival on the scene. This discrepancy, however, was pointed out to the jury and commented on at length by defense counsel in closing argument and the jury, after considering the whole testimony, found the defendant guilty. It is not for us to reverse the jury's finding of guilt on the basis of a factual discrepancy which we must assume the jury considered and resolved to its satisfaction. It is not the function of this court to weigh the facts and determine from the record the credibility of the witnesses.

The judgment of the circuit court of Winnebago County is affirmed.

Judgment affirmed.

SEIDENFELD, P. J., and VAN DEUSEN, J., concur.