THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DONALD REAGAN, Defendant-Appellant.

Third District   No. 82—92

Opinion filed December 30, 1982.

Robert Agostinelli and Peter A. Carusona, both of State Appellate Defender's Office, of Ottawa, for appellant.

Gary L. Peterlin, State's Attorney, of Ottawa (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE ALLOY delivered the opinion of the court:

The defendant was charged with three counts of attempted murder and three counts of armed violence based on the underlying offenses of attempted murder. A jury convicted the defendant of attempted voluntary manslaughter and armed violence. The trial court sentenced the defendant to eight years in prison for the convictions of armed violence. The defendant now appeals.

According to the State's evidence, the State Police were keeping the defendant and his automobile under surveillance on July 27, 1980. At 6 p.m., Officer Lawrence Stalter, driving an unmarked police car, was following the defendant. The defendant, at some point, made two turns without using his turn signals. Stalter turned on his flashing red light and followed the defendant. The defendant, however, continued to drive at a normal speed and continued to obey all stop signs. At one stop sign, Officer Robert Current, driving a marked police car,

drove past the defendant without attempting to stop him. Current's lights were not turned on. Stalter continued to follow the defendant as he made another turn. Suddenly, the defendant accelerated his car and Stalter began a high speed chase. Officer Patrick O'Connor driving a marked squad car, joined Stalter in the pursuit.

The chase ended when the defendant drove into a ditch. He got out of his car holding a rifle and shot at Stalter. O'Connor arrived at the scene a moment later and fired back at the defendant. Tonica police officer Dennis Appelbee, driving a marked squad car, came to the scene to help O'Connor and Stalter. The defendant shot at Applebee as he was arriving at the scene of the gun battle. The three officers surrounded the defendant and exchanged shots with him for several minutes. The gun battle ended after the defendant was seriously wounded. Officer Applebee was injured. The defendant received several gunshot wounds.

The defendant testified that he knew a car was following him, but did not know it was a police car. He claimed that he did not see a flashing red light nor did he hear any siren. The defendant also claimed he tried to evade the car that was following him, because he believes he has been repeatedly followed since 1978. The defendant also testified that he has been shot at several times over the past few years. The defendant also stated that he thought someone had shot at him before the chase that led to his arrest began. The defendant denied seeing any marked police cars other than Officer Current's car. The defendant testified that Current appeared to be chasing another car at the moment Current passed him. The defendant also stated that the police opened fire at him after his car ran into the ditch and that he returned the shots only in self-defense.

The trial court instructed the jury on the elements of an attempted murder and of an attempted voluntary manslaughter based on an unreasonable belief in the need for self-defense. The jury acquitted the defendant of attempted murder, but convicted him of three counts of attempted voluntary manslaughter and three counts of armed violence. The trial court sentenced him to three concurrent terms of eight years in prison on the armed violence convictions.

The defendant urges this court to reverse his convictions because, he contends, attempted voluntary manslaughter based on an imperfect self-defense is not a crime. Voluntary manslaughter based on an imperfect self-defense is defined in section 9—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 9—2(b)):

> "A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he

believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but his belief is unreasonable."

An attempt to commit a crime is also an offense:

"A person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense." (Ill. Rev. Stat. 1979, ch. 38, par. 8—4.)

An attempt to commit an offense requires a specific intent, regardless of whether the completed crime itself requires a general intent or a specific intent. In an attempted rape, for example, the defendant must intend to accomplish intercourse with a female by force and against her will. (*People v. Hanley* (1977), 50 Ill. App. 3d 651, 365 N.E.2d 676.) In an attempted armed robbery, the defendant must intend to take property from a person by force or threat of force while armed with a dangerous weapon. (*People v. Robinson* (1981), 92 Ill. App. 3d 397, 416 N.E.2d 65.) In the case at bar, the essence of the defendant's argument focuses on the need for a specific intent to commit a crime. He claims that he intended to kill in self-defense, and however unreasonable his belief may have been, he still intended to commit no crime.

The State argues that all that it would have to show is an intent to kill, in a prosecution for attempted voluntary manslaughter under section 9—2(b) of the Criminal Code of 1961. Relying upon *People v. Harris* (1978), 72 Ill. 2d 16, 377 N.E.2d 28, the State argues that in an attempted murder case, the prosecution need prove only that the defendant intended to kill, not that he intended to murder. By analogy, the State argues that it must only prove an intent to bring about the prohibited end result—a death—in an attempted voluntary manslaughter case. According to the State's argument, the intent to kill, which can exist even in the context of self-defense, is the only specific intent necessary in a prosecution for attempted voluntary manslaughter.

Whether the crime of attempted voluntary manslaughter based on an imperfect self-defense exists in this State is a question of first impression. In *People ex rel. Bassin v. Isreal* (1975), 31 Ill. App. 3d 744, 335 N.E.2d 53, the defendant sought to withdraw a guilty plea to attempted voluntary manslaughter based on an imperfect self-defense. The defendant argued no such crime existed, but the court refused to address this question, noting that the defendant—originally indicted for attempted murder—negotiated a plea of attempted voluntary manslaughter. The court ruled that the defendant received the benefit of

his bargain and should not be permitted to renounce it. In *dicta* the court suggested there was no logical inconsistency in holding that one can attempt a voluntary manslaughter. (*People ex rel. Bassin v. Isreal* (1975), 31 Ill. App. 3d 744, 747.) Similarly, in *People v. Perez* (1977), 50 Ill. App. 3d 959, 366 N.E.2d 1, the State argued the trial court erred when it released the defendant on the mistaken belief that there was no crime of attempted voluntary manslaughter under section 9—2(b). The appellate court declined to rule on the merits of the argument, finding that the trial court acquitted the defendant of the charges. The State could not appeal a judgment of acquittal.

One appellate court has ruled that there is no such crime of attempted voluntary manslaughter under section 9—2(a)—the "intense and sudden passion" voluntary manslaughter. (*People v. Weeks* (1967), 86 Ill. App. 2d 480, 230 N.E.2d 12.) The court, relying on *People v. Moore* (1893), 146 Ill. 600, 35 N.E. 166, ruled that the "intense passion" of a voluntary manslaughter under section 9—2(a) precludes any element of calculation. Since a person cannot specifically intend a sudden and intense passion, the court ruled that there is no crime of attempted voluntary manslaughter. In *Moore*, our supreme court ruled there was no crime of "assault with intent to commit voluntary manslaughter." In 1893, voluntary manslaughter was defined as "the unlawful killing of a human being without malice, express or implied, and without any mixture of deliberation whatever." (Hurd's Rev. Stat. 1891, ch. 38, par. 143.) The court noted that attempt requires a specific intent, yet the crime requires no act of deliberation as an element of the offense. A defendant could not intend to commit a crime which requires no deliberation as an element of the offense.

These cases are only tangentially relevant to determining whether attempted voluntary manslaughter under section 9—2(b) is a crime. *Moore* deals with a voluntary manslaughter statute that is much different than it is today. *Weeks* concerns a type of voluntary manslaughter wholly apart from the definition of an imperfect self-defense. The elements of each crime are very different. More significantly, section 9—2(b), unlike section 9—2(a), does define an intent to kill as an element of voluntary manslaughter. Of course, it is possible to intend to kill, even during self-defense.

The language of section 9—2(b) seems to support the State's argument that the only specific intent necessary is an intent to kill. Section 9—2(b) defines voluntary manslaughter as an intentional or knowing killing, then defines the circumstances of the killing as an unreasonable belief in the need for deadly force in self-defense. Thus, a specific intent to kill would seem to be sufficient to constitute at at-

tempted voluntary manslaughter.

A comparison of section 9—2(b) with section 9—1(a), the murder statute, exposes a flaw in the State's argument. In section 9—1(a) (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a)), the language defines the circumstances which constitute a murder—a killing without lawful justification—and then defines one of the states of mind necessary to commit the offense—an intent to kill. If the State's argument is correct, by analogy, the only intent necessary to constitute an attempted murder is a specific intent to achieve a prohibited end result: A killing. The circumstances of the incident—the lack of lawful justification—merely classify the attempted homicide as an attempted murder rather than as an attempted voluntary manslaughter.

The supreme court, in *People v. Barker* (1980), 83 Ill. 2d 319, 415 N.E.2d 404, implicitly rejected the underpinnings of the State's argument. In *Barker,* the court ruled that an attempted murder indictment which charged the defendant with committing certain acts "with the intent to commit the offense of murder" was not fatally defective. The defendant contended that an essential element of the offense, an intent to kill, was lacking in the indictment. The court disagreed, noting that a recitation of an "intent to kill" would have been redundant. In reaching its conclusion, the court stated that:

> "If the indictment had only charged the defendant with the intent to kill and did not include the allegation that the defendant acted with the intent to commit murder, it would have been defective under section 8—4(a) of the Criminal Code, *** in that it would not have charged the defendant *with an intent to commit a specific offense. The act of killing, or even intending to kill, is not necessarily a criminal offense* (self-defense, for example)." (Emphasis added.) *(People v. Barker* (1980), 83 Ill. 2d 319, 327.)

The specific intent necessary to commit the crime of attempted murder is more than an intent to kill: The intent must be a specific intent to kill without lawful justification.

■■ The confusion we see here is the result of two different intent requirements: The intent necessary to commit a completed offense differs from the specific intent necessary to commit the inchoate offense of attempt. As *Barker* indicates, section 8—4 of the Criminal Code can require more than the intent necessary for the substantive offense. There must be a specific intent to commit a crime, not just an end result.

■■ ■ Applying this analysis to the case at bar, we must conclude there is no crime of attempted voluntary manslaughter under section

9—2(b). To commit an attempted voluntary manslaughter, the defendant could not merely have an intent to kill, for that is not a crime. (*Barker.*) The defendant would have to specifically intend to kill with an unreasonable belief in the need to use deadly force in self-defense. As the State concedes, it is impossible to intend an unreasonable belief. If a defendant intended to kill with the knowledge that such action was unwarranted, he has intended to kill without lawful justification and could be prosecuted for attempted murder. In the case at bar, the defendant intended to defend himself. Although his belief in the need to defend himself or in the need to use deadly force was unreasonable, his intent was not to commit a crime. His intent was to engage in self-defense, which is not a criminal offense.

The State complains that this result leaves the prosecution with only minor charges of aggravated assault or aggravated battery with which to prosecute a defendant such as Reagan. Since voluntary manslaughter is a compromise between murder and exoneration, the State contends that attempted voluntary manslaughter also should be a compromise between attempted murder and exoneration. Aggravated assault and aggravated battery would not sufficiently punish a defendant who intended to kill.

This argument fails for several reasons. The existence of the crimes of aggravated assault and aggravated battery demonstrates that there already is a compromise between attempted murder and exoneration. Moreover, at the time the defendant here committed his acts, voluntary manslaughter was a Class 2 felony. (Ill. Rev. Stat. 1979, ch. 38, par. 9—2(c).) Therefore, an attempted voluntary manslaughter, even if it existed, is a Class 3 felony. (Ill. Rev. Stat. 1979, ch. 38, par. 8—4(c)(4).) This is the same penalty provided for aggravated battery. (Ill. Rev. Stat. 1979, ch. 38, par. 12—4(e).) Today, voluntary manslaughter is a Class 1 felony. (Ill. Rev. Stat. 1981, ch. 38, par. 9—2(c).) Aggravated battery is still a Class 3 felony, so the difference in potential sentences for voluntary manslaughter and aggravated battery is not extreme.

Moreover, any potential disparity between the sentences for attempted voluntary manslaughter and aggravated battery is irrelevant to the issue of whether an attempted voluntary manslaughter is a crime. Similarly, the fact that aggravated assault is a Class A misdemeanor (Ill. Rev. Stat. 1981, ch. 38, par. 12—2(b)) is no argument for creating a crime where none can logically exist. The defendant here could have been charged with aggravated assault and aggravated battery, because his belief in the need to defend himself would not excuse or mitigate the offense. If the legislature views these sentences as in-

sufficient punishment to meet the crime, it may change the penalties for these crimes.

We hold, therefore, that there is no crime of attempted voluntary manslaughter under section 9—2(b) of the Criminal Code. The question we must now decide is how to dispose of this case.

■ The defendant was acquitted of attempted murder, so he cannot be retried on that charge. Although the defendant's acts evidence guilt of an aggravated assault and an aggravated battery, this court has no power to find the defendant guilty of that offense. Furthermore, while an appellate court may reduce the degree of the offense of which a defendant is convicted (87 Ill. 2d R. 615(b)(3)), this power is available only when lesser included offenses are involved in the convicted offense. (*People v. Towers* (1974), 17 Ill. App. 3d 467, 308 N.E.2d 223.) The defendant here was not convicted of any offense, so this court cannot substitute its judgment of the defendant's acts. Finally, even though aggravated assault can be a lesser included offense of attempted murder (*People v. Chatman* (1981), 102 Ill. App. 3d 692, 430 N.E.2d 257 (aggravated battery is a lesser included offense of attempted murder)), the defendant cannot be retried on that charge. When a defendant is indicted for, and tried on, the greater offense, and the trier of fact acquits him of that offense while remaining silent as to all lesser included offenses, the acquittal operates as a bar to subsequent prosecution of any of the lesser offenses. (Ill. Rev. Stat. 1981, ch. 38, par. 3—4(b)(1); *People v. Jenkins* (1976), 41 Ill. App. 3d 392, 354 N.E.2d 139.) In summary, this court cannot enter a judgment of guilty of aggravated assault and it cannot order a new trial on that charge.

We recognize that reasonable people can disagree over the result in this case. Some commentators have argued that there is a crime of attempted voluntary manslaughter based on an unreasonable self-defense. (Sachs, *Is Attempt to Commit Voluntary Manslaughter a Possible Crime?* 71 Ill. B. J. 166 (1982).) We believe, however, that the relevant precedents, including *Barker* and *Moore*, lead to the conclusion we enunciate today. Certainly, the issue the defendant raises in this appeal is worthy of supreme court review. Finally, our holding in this case makes it unnecessary to decide any of the other issues the parties raised in their arguments.

The judgment and sentence of the circuit court of La Salle County is reversed.

SCOTT and STOUDER, JJ., concur.