THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GLENN RAYMOND FISCHER, Defendant-Appellant.

First District (3rd Division)    No. 80-566

Opinion filed September 9, 1981.

RIZZI, P. J., specially concurring.

Constantine P. Xinos, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Mary Ellen Dienes, and William Gamboney, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE WHITE delivered the opinion of the court:

Defendant Glenn Raymond Fischer was charged by information with two counts of murder (Ill. Rev. Stat. 1979, ch. 38, pars. 9—1(a)(1), 9—1(a)(2)), and two counts of armed violence (Ill. Rev. Stat. 1979, ch. 38, par. 33A—2). Following a bench trial, he was acquitted of all murder and armed violence counts, but convicted of voluntary manslaughter (Ill. Rev. Stat. 1979, ch. 38, par. 9—2) and sentenced to seven years' imprisonment. On appeal to this court defendant asserts: 1) that the trial judge erred by refusing to admit into evidence testimony by a defense witness describing two prior acts of the deceased which allegedly showed his violent, aggressive character; 2) that the trial judge improperly relied upon a prior void conviction in sentencing the defendant; and 3) that defendant is entitled to two years and 11 months credit on the seven-year sentence because of time spent in the penitentiary on a conviction based on a statute subsequently declared unconstitutional and void.

The defendant's charges were based on a shooting incident which occurred at 2 a.m. on December 1, 1978, in a Chicago tavern called the "Last Drop Inn." Both the defendant and the deceased, Thomas King, had been in the tavern since the previous evening. In the opinion of the bartender, Rene Peralta, King had drunk about 12 beers and the defendant "about eight shots and beers," but neither was intoxicated at the time of the shooting. Defendant had been observed at about 9:30 p.m. pointing a pistol at another patron in the bar. When asked by the bartender to leave, defendant complied but returned after a short period and commenced drinking. For approximately four hours defendant and deceased remained drinking at opposite ends of the bar. Shortly before 2 a.m.

defendant walked to the men's room located at the rear of the bar. Upon leaving the washroom defendant walked by King who was seated with some other patrons. At this point defendant had some words with King, who challenged him to pull out his "popgun" or "beanie." Defendant responded by pulling out his revolver and pointing it at King's head saying, "I'll blow you away" or "I ought to blow your head off." When King attempted to grab the gun or push it out of defendant's hand the gun discharged. A struggle then ensued between the two men, and a second shot was heard when the two fell to the floor. Following this shot King lay dead on the floor, and the defendant got up and exited the tavern. According to the testimony of the State's witnesses, no weapon or objects of any kind were observed in the deceased's hands prior to or during the struggle with the defendant. Moreover, no bottles, weapons or glass were found in the area surrounding the body after the incident.

The police arrived at the lounge shortly after the shooting and were directed to the defendant's apartment by State's witness Robert Cook. Upon arriving at the defendant's apartment building the police went up the back stairs and observed defendant and another man bending over the kitchen sink washing blood from defendant's head. The witnesses also overheard defendant say to the other man, who was later identified as John McDonough, a family friend, "The son of a bitch hit me in the head with a bottle. What did you expect me to do?" When the officers entered the apartment, a gun was retrieved and defendant was placed under arrest. Following his arrest, defendant informed the police officers that the deceased had struck him in the head with a bottle. The officers then returned to the tavern to search for broken bottles or other debris but found none. The bartender testified that he had cleaned the bar in the interim as was his normal routine before leaving work, but stated that he had recovered no bottles from the area of the bar where the deceased was shot.

Following a denial of the State's motion for a directed finding, the defense opened its case. In support of a plea of self-defense, the defense sought to introduce testimony of Sebastian Cannata relating to two prior specific acts of violence by deceased. After an offer of proof the trial court refused to admit the evidence. However, Cannata was allowed to testify that the victim's reputation in the community was very bad and that the victim was a violent person.

Defendant testified on his own behalf. He stated that on the night of the shooting, King had called him a name as he was walking toward the washroom at about 8 or 9 p.m. At that time defendant stated to the deceased that he did not want any trouble and returned to his seat at the other end of the bar. Defendant testified that upon another trip to the washroom between 1:30 and 2 a.m., King called him some more names.

When the defendant came out of the washroom, King said to him, "Hey, punk, pull your beanie out." At this point King was rising from his barstool with a beer bottle in his hand. Defendant stated that he then pulled out his gun and said to King, "If you don't leave me alone, I will blow you away." Once defendant saw King return to his seat and drop the bottle, he turned to walk away but was struck on the back of the head with a bottle. According to the defendant, he then turned, pulled the gun and fired a shot away from King. When the two began to struggle, the gun accidentally discharged a second time, killing King. Although the defendant admitted that the gun was in his hand when King was shot, he has no recollection as to whether his finger was on the trigger at the time. Defendant stated that when he stood up his head was bleeding and he immediately left the bar and went home. Defendant testified at trial that he had inquired prior to the incident about the victim's reputation in the community and that the victim was said to be a troublemaker.

The defense also called John McDonough, who testified that when the defendant arrived at the apartment during the early morning hours of December 1, 1978, defendant's face was puffed up and he was bleeding from the head. McDonough further stated that when he asked defendant what had happened, defendant replied, "Some son of a bitch hit me over the head with a bottle." McDonough stated that when the gun was taken from the defendant, defendant stated, "I think I have shot somebody."

The State on rebuttal presented a certified copy of defendant's 1970 conviction for "possession of a narcotic drug" for which defendant had been sentenced to five years' probation. The manslaughter conviction and seven-year sentence followed.

Defendant's first contention on appeal is that the trial court erred in refusing to admit into evidence the testimony of Sebastian Cannata as to two prior violent acts of the deceased. The State contends that this evidence is inadmissible as the acts were directed at someone other than the defendant and that the defendant had no knowledge of the acts at the time the shooting occurred.

In Illinois, evidence of specific acts of violence, *if known to the defendant*, are admissible to show the reasonableness of defendant's apprehension of danger and therefore are admissible to establish self-defense. (*People v. Gall* (1979), 79 Ill. App. 3d 823, 398 N.E.2d 1118.) The purpose behind permitting the introduction of such evidence is to show the circumstances confronting the defendant, the extent of his apparent danger, and the motive by which he was influenced, as such factors show the defendant's state of mind at the time of the occurrence. *People v. Stombaugh* (1972), 52 Ill. 2d 130, 284 N.E.2d 640; *People v. Gall* (1979), 79 Ill. App. 3d 827; *People v. Peeler* (1973), 12 Ill. App. 3d 940, 299 N.E.2d 382.

■■ In the instant case, however, it is apparent that what the defendant is

attempting to show is not the fearful or apprehensive state of mind of the defendant, but rather the propensity of the deceased for violence, in order to corroborate defendant's testimony that the deceased was the aggressor on this particular occasion. Where evidence of the specific acts is sought for such purpose, it would serve no purpose to require defendant to have knowledge of the prior acts. *People v. Baer* (1976), 35 Ill. App. 3d 391, 342 N.E.2d 177, supports this conclusion. As in the case at bar, the defendant in *Baer* sought to introduce evidence of specific violent acts to establish a character trait of the deceased, not his reputation. The court stated the general rule that where the plea is self-defense and the defendant attempts to show that the victim was the aggressor, evidence of the propensity of the victim for violent aggression is generally permitted. However, in *Baer* the tendered evidence was held to be insufficient to prove the victim had a violent nature. Thus, the court ruled there was no error in excluding it. For the same reasons we find no error in the exclusion of Mr. Cannata's testimony. Cannata's testimony as set forth in the offer of proof was that on one occasion, while he was working as a bartender at a tavern in Chicago, he told deceased that it was against the rules for patrons to exit through the back door of the bar. King disregarded Cannata's instruction and left by that exit. Further, Cannata stated that on another occasion approximately one year later, King became "rowdy" in the bar after having been refused a drink, and that he began pounding the bar and name calling. After a while, King challenged Cannata to come outside. King then walked out of the bar and peered through the window at Cannata for about five minutes before leaving.

In our opinion, these acts described by Cannata were insufficient to establish that King was violent in nature. Many individuals become loud and somewhat less orderly after a few hours of drinking in their local tavern. This does not make them violent persons. We do not believe that this evidence has any probative value in determining whether in the fight with King defendant was the aggressor or acting in self-defense. Accordingly, we find that the trial judge properly excluded this evidence.

Defendant next asserts that the trial judge relied on an improper factor in sentencing him to a seven-year imprisonment for voluntary manslaughter (Ill. Rev. Stat. 1979, ch. 38, par. 9—2). In the hearing on aggravation and mitigation, it was brought out that in 1965 defendant had been sentenced to the penitentiary for possession of marijuana, but that the statute under which defendant was convicted was later declared unconstitutional in *People v. McCabe* (1971), 49 Ill. 2d 338, 275 N.E.2d 407. Defense counsel argued before the trial court that it would be improper to consider defendant's prior penitentiary sentence in aggravation because the statute under which he had been convicted had been declared unconstitutional. The following colloquy occurred:

"The Court: This defendant is not new to the Criminal Justice

System. He's been in the penitentiary. He is an appropriate candidate for the penitentiary, of course. Miss Clerk, I will sentence Mr. Fischer to the custody of the Illinois State Penitentiary for a period of seven years. Judgment is entered on the finding and sentence.\* \* \*

Mr. Xinos: It seems to me that the court is considering, when you say the defendant has been in the penitentiary before, I have pointed out that that was the narcotics was marijuana, and—

The Court: I understand, Mr. Xinos. If the statute involving any offense is done away with by the Legislature this year, that doesn't affect what happened five years ago.

Mr. Xinos: Judge, it wasn't the statute that did away with it. It was the *McCabe* case in 1971.

The Court: The Court declared it unconstitutional.

Mr. Xinos: That's right.

The Court: That has nothing to do with what went before.

Mr. Xinos: It was unconstitutional from the beginning, Judge, and all those convictions were reversed and nullified.

The Court: I understand.

Mr. Xinos: And is the Court saying that, you know, he spent two years in the penitentiary, three years as he tells me, for a crime that, that was not a crime, and the court is saying—

The Court: Was a crime, or he wouldn't have been there. * * *

The Court: There was a possession.

Mr. Xinos: A '70 conviction.

The Court: For possession of—

Mr. Xinos: Of heroin.

The Court:—of heroin.

Mr. Xinos: That's true, Judge.

The Court: Well, that's sufficient.

Mr. Xinos: But you are saying that he is not a stranger to the penitentiary, and I really don't think that's fair when the statute that he was convicted under was subsequently declared to be unconstitutional.

The Court: Well, nevertheless, that will be the order."

■■ While the imposition of sentence is generally a matter of judicial discretion and will not be altered upon review absent a showing of abuse (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882; *People v. Kirkwood* (1980), 82 Ill. App. 3d 252, 402 N.E.2d 677), it appears here that the trial judge improperly relied upon defendant's 1965 conviction for possession of marijuana, a conviction based upon a statute later declared unconstitutional. We find this to be an abuse of discretion requiring that this cause be reversed and remanded for resentencing.

Defendant's final argument is that he should receive credit against his present sentence for time served pursuant to his 1965 conviction. Following his conviction in 1965 for possession of marijuana, defendant served 2 years and 11 months in the Illinois Department of Corrections. Defendant now requests "compensation" for the time that he served because the statute under which he was convicted was subsequently declared unconstitutional. We find this argument to be patently without merit.

■■ Defendant's only support for his argument is article 1, section 12 of the Illinois Constitution, which provides: "Every person shall find a certain remedy in the laws for all injuries and wrongs which he received to his person, privacy, property, or reputation. He shall obtain justice by law, freely, completely, and promptly." This provision does not mandate the type of relief defendant seeks. In fact, if defendant were given the credit he now requests, this court would be encouraging the commission of crime. A defendant who had wrongly served a prison sentence would then have license to commit a "free" crime or a crime with a diminished sentence. We cannot condone such an absurd result.

For the reasons stated above the decision of the circuit court of Cook County is reversed and remanded for resentencing.

Reversed and remanded for resentencing.

McGILLICUDDY, J., concurs.

Mr. PRESIDING JUSTICE RIZZI, specially concurring:

I agree with the result reached in the opinion of the court, but I cannot concur with the rationale in the opinion regarding the admissibility of the testimony of Sebastian Cannata as to specific prior acts of the decedent. The opinion of the court adopts the position that specific prior acts of a decedent are admissible as a character trait of the decedent to establish that the decedent was the aggressor.[1] I disagree.

I believe that the following rules should be followed with regard to admitting character or reputation evidence of the decedent in a homicide case where there is some evidence of self-defense:

(1) If the evidence is offered by the defendant to show the state of mind of the defendant, *i.e.*, that defendant reasonably believed that his use of force was necessary, then the decedent's reputation for turbulence and violence and specific prior acts of turbulence and violence committed by the decedent are admissible if known by the defendant at the time. If not known by the defendant at the time, they are not admissible.

---

[1] The opinion of the court goes on to conclude that the testimony as to the specific acts of the decedent was not admissible in this case, but for a different reason.

(2) If the evidence is offered by the defendant as a character trait of the decedent to show that the decedent was the aggressor, then the reputation of the decedent for turbulence and violence is admissible. This evidence would be admissible even if the defendant had not known of the decedent's reputation at the time. However, specific prior acts of turbulence and violence by the decedent would not be admissible whether or not known by the defendant at the time.

In the present case, since defendant offered the specific prior acts of the decedent as a character trait to show that the decedent was the aggressor, they were not admissible. Only the reputation of the decedent for turbulence and violence would have been admissible.

The opinion of the court disregards the distinction between the admissibility of the reputation and the admissibility of specific prior acts of the decedent in a case where there is some evidence of self-defense. In doing this, the opinion merely refers to a statement found in *People v. Baer* (1976), 35 Ill. App. 3d 391, 396, 342 N.E.2d 177, 181-82, which in turn cites only a secondary authority to support the conclusion that specific prior acts of the decedent are admissible to establish that the decedent was the aggressor. However, the great majority of cases and jurisdictions where the issue has been raised hold to the contrary. *State v. Jacoby* (Iowa 1977), 260 N.W.2d 828, and cases cited therein; see *State v. Barbour* (1978), 295 N.C. 66, 243 S.E.2d 380; *Henderson v. State* (1975), 234 Ga. 827, 218 S.E.2d 612; cases cited in 1 Wigmore on Evidence § 198, at 677 n.1 (3d ed. 1940).

In *State v. Jacoby* (Iowa 1977), 260 N.W.2d 828, 838, the Supreme Court of Iowa reviewed cases from various jurisdictions where the question has been posed. The court succinctly stated:

> "It is the rule in Iowa and the majority of jurisdictions that the quarrelsome, violent, aggressive or turbulent character of a homicide victim cannot be established by proof of specific acts."

Another example of a case which expressly holds that specific prior acts are not admissible to show another person's character as evidence of his conduct on a particular occasion is *State v. Barbour* (1978), 295 N.C. 66, 74, 243 S.E.2d 380, 385. There, the Supreme Court of North Carolina held:

> "The trial court's actions in excluding this witness's testimony regarding specific acts of violence by the deceased which were not shown to be within defendant's knowledge prior to the homicide and striking her statements as to the deceased's violent character based solely on her personal experience were correct, *since specific acts and a witness' personal opinion are not admissible to*

*show another person's character as evidence of his conduct on a particular occasion."* (Emphasis added.)

Also, the Supreme Court of Illinois has recognized the principle that specific prior acts are not admissible to show another person's character as evidence of his conduct on a particular occasion. In *People v. Willy* (1921), 301 Ill. 307, 318, 133 N.E. 859, 864, the court stated:

"It appears to have been the early practice to prove the character of a person by the testimony of others who testified directly to his character from personal knowledge and observation. While there is some authority for proving character in this manner at the present time, such practice is unusual and against the great weight of modern authority. It is generally held that the personal opinion of a witness is incompetent evidence of either character or reputation, and that character is provable only by evidence of general reputation. (3 Ency. of Evidence, 27-35.) *Evidence of specific acts of bad conduct is not admissible to show bad character."* (Emphasis added.)

In addition, I believe that the evidentiary reasons for prohibiting the introduction of specific prior acts of the decedent to prove that the decedent was the aggressor are convincing. First, it would be unfair and prejudicial to permit such evidence because a single prior act of the decedent may have been exceptional, unusual and not characteristic, *i.e.,* a specific prior act would not show a character trait to commit an act or to react in a certain way. Second, permitting proof of specific prior acts of the decedent to show that he acted a certain way during the incident involved in the case on trial would open up numerous collateral issues, virtually making a separate trial out of each separate act. Third, although the State is bound to foresee that the reputation of the decedent may be put in issue, it cannot be expected to anticipate and prepare to rebut each and every specific prior act of the decedent. (See *Henderson v. State* (1975), 234 Ga. 827, 829, 218 S.E.2d 612, 615 (1975); Hunter, Trial Handbook for Illinois Lawyers §72:1, at 735 (4th ed. 1972).) Also, it has been stated that proving a character trait by evidence of specific instances of conduct "possesses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time." *State v. Jacoby* (Iowa 1977), 260 N.W.2d 828, 838, quoting Notes of Advisory Committee on Proposed Rules, 28 U.S.C.A. R. 405, at 148 (1975).

Accordingly, in the present case I believe that the trial court properly refused to admit the testimony of Sebastian Cannata as to specific prior acts of the decedent because such evidence is not admissible to prove that the decedent was the aggressor. I disagree with the proposition expressed in the opinion of the court that specific prior acts of a decedent are admissible to prove that the decedent was the aggressor.