2019 IL App (1st) 172800-U

FIRST DISTRICT
SECOND DIVISION
November 26, 2019

No. 1-17-2800

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County, Illinois. |
| | ) | |
| v. | ) | No. 16 CR 06783 |
| | ) | |
| PABLO HERRERA, | ) | Honorable |
| | ) | Marc W. Martin, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Justices Lavin and Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*: The sentencing court properly considered the defendant's lack of criminal activity in mitigation.

¶ 2    Following a jury trial, defendant Pablo Herrera was convicted of three counts of aggravated criminal sexual abuse of I.R. and sentenced to a consecutive term of 20 years in prison. Herrera appeals his sentence, arguing that the sentencing court failed to consider that he had no history of criminal activity in mitigation because it found that he did not live a law-abiding life due to his illegal immigration status. Finding no merit in Herrera's claim, we affirm.

¶ 3    When the sexual abuse occurred, I.R. was 14 to 15 years old and a sophomore in high school, participating in an individual education plan. I.R. had a generalized learning disability and

communicated at a third to fourth grade level. Herrera is about 18 years older than I.R. Because details of the sexual abuse are not directly relevant to the disposition of this appeal, we will only briefly summarize the facts from I.R.'s trial testimony concerning the sexual abuse.

¶ 4      In October 2013, I.R.'s mom rented the living room of the one-bedroom apartment where Herrera lived with his girlfriend, Alma Sanchez. I.R. and her mom slept in the living room, and Herrera, Sanchez, and their four children slept in the one bedroom. I.R. and her mom lived there for about three to four months.

¶ 5      While living in that apartment, Herrera regularly had sexual intercourse with I.R. at night when her mom was at work. I.R. did not tell anyone about the incidents, because Herrera threatened her that she would get into trouble and would no longer be able to live there. At some point, I.R. and her mom moved out of that apartment and lived with a different family. Eventually, they moved in with Sanchez again, who by this time lived in a different apartment building located nearby. Although Herrera and Sanchez had broken up, he still came to the apartment to visit his children. During a visit, Herrera tried to touch I.R. in a sexual manner. I.R. told him "not to do that" and Herrera "just stopped."

¶ 6      On March 30, 2016, when I.R. was at school, her classmates poked at her stomach and told her that she was pregnant. I.R. did not think she was pregnant, but she went to talk to her special education teacher, who took her to the school counselor. I.R. told them what happened with Herrera. I.R. took a pregnancy test at school, which confirmed that she was pregnant.

¶ 7      The school counselor reported the matter to authorities and an investigation began. During the investigation, Herrera told an assistant state's attorney that he "had a relationship with I.R." and they really liked each other. Herrera admitted that he had sex with I.R. between 8 to 10 times and knew she was 15 years old at the time. Herrera also knew about I.R.'s intellectual disability and that she was being made fun of at school.

¶ 8       On April 1, 2016, I.R. had a baby. The parties stipulated that (i) Herrera was not the baby's biological father and (ii) the biological father had been charged with a crime.

¶ 9       The jury found Herrera guilty of three counts of aggravated criminal sexual abuse. Herrera's presentence investigation report (PSI) indicated that he did not have any prior convictions or any other known pending cases. Herrera was not a citizen. He "left Mexico fourteen years ago [in 2003] and entered the United States by crossing the border in California by foot. He reported that he does not have any legal immigration status at the present time." According to Herrera's version of events, he denied having "any kind of relationship with [I.R.] that she is accusing me of. I am being accused unjustly because I never did anything."

¶ 10      During the sentencing hearing, Herrera spoke in allocution and continued to proclaim his innocence, stating that he was "being accused of many things that are unjust." Herrera further proclaimed that he "couldn't have done what she says I did to her when it's not true." The State argued factors in aggravation and defense counsel argued factors in mitigation, particularly that Herrera had "absolutely no criminal background" and "he has never been arrested his entire juvenile or adult life."

¶ 11      In sentencing Herrera, the judge stated that he would "discuss aggravation factors that are either applicable or warrant comment." In aggravation, the sentencing judge found that "this offense caused serious mental harm and lasting harm to the victim," who had a mental disability. The judge also found that Herrera used his position as a landlord to commit the offenses.

¶ 12      Likewise, the sentencing judge stated that he would "discuss the mitigation factors that are either applicable or warrant comment." Regarding the mitigation factors, the sentencing judge stated in relevant part:

"Paragraph 7 provides that the defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the

-3-

commission of the present crime as mitigation. *It is true the defendant has no criminal record and I will consider that in mitigation.* The Court, however, cannot conclude that the defendant led a law-abiding life. *** [T]he PSI states that the defendant is not a citizen. He was not in this country legally at the time of the offense. Every day he lived in this country he did so illegally. So that's really not law-abiding conduct.

Looking to paragraph 8, that examines whether the defendant's criminal conduct was a result of circumstances unlikely to recur. *** According to the testimony at trial about the defendant's statement which the Court finds credible, the defendant admitted sexual contact with the victim between 8 and 10 times. The victim who has trouble with perception of time testified that the defendant had sexually penetrated her on two occasions and he attempted sexual contact on a third occasion. And why this is significant it shows that the defendant's criminal conduct was not a one time event, it was not aberrant behavior, the defendant is a sexual predator, and the Court cannot find that this type of behavior is unlikely to recur.

Paragraphs 9 and 10 look to the defendant's character and attitude and whether he's likely to commit another crime or comply with probation. I'll discuss the defendant's character in a moment, but my comments about the defendant's status in this country, that is, he was living here in violation of the law answer that paragraphs 9 and 10 are inapplicable in mitigation.

Paragraph 11 examines whether the defendant's incarceration would entail excessive hardship to his dependents. *** I will find that the defendant did provide some financial support to his family and that will entail a hardship on them, although it's not an excessive hardship to dependents." (Emphasis added.)

¶ 13    While acknowledging that the law permitted probation as a sentence, the sentencing court determined that the "public needs protection from Mr. Herrera. A term of probation would deprecate the seriousness of his conduct and would be inconsistent with the ends of justice. Accordingly, the Court finds that probation is not an appropriate sentence in this case."

¶ 14    The sentencing judge also acknowledged that concurrent sentences were presumed and consecutive sentences for separate aggravated criminal sexual abuse convictions were not mandated. However, the judge found the offenses "very serious" and that "[t]he defendant sexually exploited and violated I.R. in base ways for his own sexual gratification." The judge found that "[t]he defendant is a cold, calculating sexual predator[]" and "that consecutive sentences are required to protect [the public from] the defendant's future criminal conduct."

¶ 15    The sentencing judge recognized that "[a]ggravation and mitigation is a balancing equation rather than an arithmetic formula" and found that "[t]he aggravation in this case is significant and far outweighs the mitigation." The sentencing judge "considered the evidence at trial, the matters and arguments presented at this hearing, the aggravation, the mitigation, the pre-sentence report *** the defendant's allocution statement, balanced the factors in aggravation and mitigation, and considered the applicable statutes on sentencing." The sentencing court imposed the following sentences to run consecutively: (i) the maximum term of 7 years on each of the 2 counts of aggravated criminal sexual abuse (14 years total) and (ii) 6 years on the other count "in recognition of the mitigation discussed earlier." Herrera moved to reduce his 20-year consecutive sentence, arguing that his "lack of criminal background should be recognized." Following a hearing, the sentencing court denied Herrera's motion.

¶ 16    The sole issue on appeal concerns whether the sentencing court failed to consider that Herrera had no history of criminal activity in mitigation.

¶ 17   Section 5-5-3.1(a) of the Unified Code of Corrections (Code) lists the mitigation factors a court must consider when imposing a sentence. 730 ILCS 5/5-5-3.1(a) (West 2016); *People v. Jones-Beard*, 2019 IL App (1st) 162005, ¶ 20; *People v. McWilliams*, 2015 IL App (1st) 130913, ¶ 27. Mitigation factor number seven requires consideration of whether "the defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present crime." 730 ILCS 5/5-5-3.1(a)(7) (West 2016). A sentencing court may not disregard mitigating evidence, but the court may determine the weight attributable to such evidence. *People v. Brown*, 2017 IL App (1st) 142877, ¶ 63.

¶ 18   The Code provides a sentencing court with wide discretion when determining the appropriate penalty. *People v. LaPointe* (1981), 88 Ill. 2d 482, 492 (1981). Thus, a reviewing court will reverse a sentence only when the record shows that the sentencing court abused its discretion. *McWilliams*, 2015 IL App (1st) 130913, ¶ 28; *People v. Alexander*, 239 Ill. 2d 205, 212 (2010); *People v. Stacey*, 193 Ill. 2d 203, 209 (2000); *People v. Berry*, 175 Ill. App. 3d 420, 429 (1988). The threshold for finding an abuse of discretion is high and will be overcome only when the " 'court's ruling was arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the circuit court.' " *Habitat Company, LLC v. Peeples*, 2018 IL App (1st) 171420, ¶ 46 (quoting *Sharbono v. Hilborn*, 2014 IL App (3d) 120597, ¶ 46). A reviewing court may not reverse a sentence "just because it would have weighed the factors differently." *People v. Scott*, 2015 IL App (1st) 131503, ¶ 48.

¶ 19   Raising a new claim, Herrera argues that the sentencing court did not consider mitigation factor number seven based on its finding that he did not live a "law-abiding life" given his lack of "any legal immigration status at the present time." The State argues that Herrera forfeited this claim. We agree. See *People v. Reed*, 177 Ill. 2d 389, 395 (1997) (a posttrial motion raising the

alleged sentencing error allows the court to review the alleged error to determine if there is any merit and saves the delay and expense of an appeal if meritorious).

¶ 20    The law is clear that "to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required." *People v. Hillier*, 237 Ill. 2d 539, 544 (2010); *In re Omar F.*, 2017 IL App (1st) 171073, ¶ 52; *People v. Nowells*, 2013 IL App (1st) 113209, ¶ 18. Here, defense counsel did not object to the sentencing court's analysis of Herrera's "law-abiding life" during the sentencing hearing, *or* raise this alleged error in either the posttrial motion or during the hearing on the motion to reconsider the sentence. In fact, defense counsel made *no* objections when the sentencing court discussed its consideration and balancing of the factors in aggravation and mitigation. Thus, Herrera's claim was forfeited, and we may only review his claim if he has established plain error. *Hillier*, 237 Ill. 2d at 545; *People v. Taylor*, 2011 IL 110067, ¶ 30.

¶ 21    The plain error doctrine provides " 'a narrow and limited exception to the general waiver rule' to be invoked only when the error alleged is 'so substantial as to deprive defendant of a fair trial.' " *People v. Szabo*, 113 Ill. 2d 83, 94 (1986) (quoting *People v. Pastorino*, 91 Ill. 2d 178, 188-89 (1982)). In the sentencing context, the plain error doctrine permits review of an unpreserved error when either "(1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *Hillier*, 237 Ill. 2d at 545. Under either prong, the defendant bears the burden of persuasion and the failure to meet that burden requires the procedural default to be honored. *Id.* The initial step in a plain error analysis is to determine whether an error occurred, because absent error, there can be no plain error. *Id.*; *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007); *People v. Powell*, 2012 IL App (1st) 102363, ¶ 7.

¶ 22    In this case, Herrera failed to establish any error. The sentencing court explicitly stated "It is true the defendant has no criminal record *and I will consider that in mitigation*." (Emphasis added.) The sentencing court also "*considered* the evidence at trial, the matters and arguments presented at this [sentencing] hearing, the aggravation, *the mitigation*, the pre-sentence report. I've considered the defendant's allocution statement, *balanced the factors in aggravation and mitigation*, and considered the applicable statutes on sentencing." (Emphasis added.) Likewise, the sentencing court "recognized the mitigation discussed earlier" when it imposed a sentence below the maximum on one count of aggravated criminal sexual abuse.

¶ 23    Importantly, a sentencing court is presumed to have considered the relevant mitigation factors, and that presumption cannot be overcome unless the defendant proves otherwise with affirmative evidence. *Jones-Beard,* 2019 IL App (1st) 162005, ¶¶ 2, 22; *McWilliams,* 2015 IL App (1st) 130913, ¶ 27; *People v. Burton,* 184 Ill. 2d 1, 34 (1998); *People v. Peoples,* 2015 IL App (1st) 121717, ¶ 113; *People v. Tuduj,* 2014 IL App (1st) 092536, ¶ 112. Herrera has offered no such affirmative evidence. In fact, Herrera's claim that the sentencing court failed to consider that he had no history of criminal activity is belied by the sentencing judge's explicit statements. The sentencing court also explicitly found that the factors in aggravation outweighed the mitigation factors. See *People v. Rathbone,* 345 Ill. App. 3d 305, 312 (2003) (the weight attributed to a factor in aggravation or mitigation addresses the court's exercise of its discretion and not the fairness of the proceedings or the integrity of the judicial process). Herrera is essentially urging this court to reweigh the balancing factors and assign a greater weight to his lack of criminal activity than did the sentencing court, a task we are not permitted to do. *People v. Coleman,* 166 Ill. 2d 247, 261-62 (1995); *Peoples,* 2015 IL App (1st) 121717, ¶ 112; *People v. Scott,* 2015 IL App (1st) 131503, ¶ 48 (a reviewing court may not reverse a sentence "just because it would have weighed the factors

differently"). Here, the record is clear that the sentencing court considered Herrera's lack of criminal history in fashioning his sentence.

¶ 24 Moreover, the sentencing range for aggravated criminal sexual abuse is three to seven years. 720 ILCS 5/5-4.5-35 (West 2016); 720 ILCS 5/11-1.60(d) (West 2016). The sentencing court imposed a sentence for each of the three counts that falls within that statutory range. Not only was Herrera's 20-year sentence within the statutory range of 12 to 21 years, but his sentence reflects the seriousness of the offense and his potential for rehabilitation. See *People v. Fern*, 189 Ill. 2d 48, 54 (1999) (a sentence within the statutory range will not be deemed excessive "unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense"); *People v. Butler,* 2013 IL App (1st) 120923, ¶ 31 (a sentence achieves "the spirit and purpose of the law" when it reflects the seriousness of the offense and considers the defendant's rehabilitative potential.) Indeed, the sentencing court found the offenses committed by Herrera were "very serious" and he "took advantage of and exploited a mentally disabled minor." The sentencing court also found that Herrera was a sexual predator and it could not "find that this type of behavior [was] unlikely to recur."

¶ 25 For the reasons stated, the record contains no support for Herrera's claim that the sentencing court erred by not considering in mitigation that he had no history of criminal activity. Because there was no error, there can be no plain error. *Hillier*, 237 Ill. 2d at 545; *Piatkowski*, 225 Ill. 2d at 565; *Powell*, 2012 IL App (1st) 102363, ¶ 7. Therefore, we affirm Herrera's sentence.

¶ 26 Affirmed.